UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL A. FAZIO et al.,

Plaintiffs,

v.

WASHINGTON MUTUAL FA, et al.,

Defendants.

No. 2:14-cv-0538 GEB KJN PS

ORDER AND

FINDINGS AND RECOMMENDATIONS

INTRODUCTION

Plaintiffs Michael A. Fazio and Kim Marie Fazio, proceeding without counsel, commenced this foreclosure-related action on February 25, 2014.[1] (ECF No. 1.) Presently pending before the court are motions to dismiss filed by defendant JPMorgan Chase Bank, N.A. ("JPMC") and defendant MTC Financial Inc. dba Trustee Corps ("Trustee Corps"). (ECF Nos. 8, 12.) Plaintiffs filed oppositions to the motions (ECF Nos. 18, 19), and both defendants filed reply briefs. (ECF Nos. 20, 22.)[2] On May 29, 2014, after concluding that oral argument would not be

[1] This action proceeds before the undersigned pursuant to E.D. Cal. L.R. 302(c)(21) and 28 U.S.C. § 636(b)(1).

[2] Trustee Corps's reply brief was untimely filed on May 29, 2014, because the court's April 14, 2014 order set a special briefing schedule whereby reply briefs were required to be filed no later than May 22, 2014. (ECF No. 17.) Accordingly, the court has not considered Trustee Corps's late-filed reply brief.

of material assistance in resolving the motions, the court submitted the motions on the record and briefing pursuant to Local Rule 230(g). (ECF No. 21.)

Upon consideration of the parties' written briefing, the court's record, and the applicable law, the court recommends that defendants' motions to dismiss be granted, and that the entire action be dismissed upon the terms outlined below.

BACKGROUND

The background facts are taken from plaintiffs' operative complaint filed on February 25, 2014, unless otherwise noted. (See Complaint, ECF No. 1 ["Compl."].) Plaintiffs' 41-page complaint is rambling, somewhat confusing, and at times appears to have been copied from pleadings in another case(s).[3] However, the gist of plaintiffs' action is that defendants JPMC, Trustee Corps, and the Federal Deposit Insurance Corporation ("FDIC") are purportedly "third-party strangers" to plaintiffs' mortgage loan originally obtained through defendant Washington Mutual Bank, F.A. ("WaMu") in December 2007 with respect to real property located at 7365 Nutmeg Lane in Placerville, California. (Compl. ¶¶ 1, 16.) Plaintiffs allege that defendants JPMC, Trustee Corps, and the FDIC "have no ownership interest entitling them to collect payment or declare a default." (Id. ¶ 1.) Nevertheless, by purportedly fabricating various papers and recorded documents, these defendants allegedly defrauded plaintiffs and millions of other American homeowners "into believing that they have the right to collect on a debt in which [JPMC and the FDIC] have no secure or unsecured legal, equitable, or pecuniary interest…." (Id. ¶¶ 1-2.) According to plaintiffs, they brought the instant action "to cease Defendants' fraudulent practices, discover the true holder in due course of their Promissory Note…and determine the status of Defendants' claims." (Id. ¶ 4.)[4]

---

[3] By way of example, the complaint contains allegations regarding conduct of U.S. Bank and Bank of America, N.A., which are not parties to this litigation. (Compl. ¶¶ 110 ["Defendants are jointly and severally liable for BANA's, and/or U S Bank's [sic] negligent and reckless conduct."], 145-46.) Additionally, according to its heading, the sixth cause of action is asserted against U.S. Bank, a non-party. (Compl. at 30.)

[4] Plaintiffs' factual allegations and theories are addressed in greater detail in the court's discussion of the various causes of action below.

Liberally construed, the complaint asserts nine causes of action against all defendants (WaMu, FDIC, JPMC, and Trustee Corps) for: (1) declaratory relief under 28 U.S.C. §§ 2201, 2202; (2) quasi contract; (3) negligence; (4) violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"); (5) violation of California Business and Professions Code §§ 17200 et seq.; (6) violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"), and in particular, 15 U.S.C. § 1641(g); (7) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO), and in particular, 18 U.S.C. § 1962; (8) fraud; and (9) accounting. Plaintiffs seek compensatory, special, and general damages in an amount not less than $5,000,000.00; punitive and exemplary damages; disgorgement of amounts wrongfully taken; as well as various types of declaratory and injunctive relief. (See generally Compl.)

LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal

conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071. The court must construe a *pro se* pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in her complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe *pro se* filings liberally even when evaluating them under the standard announced in Iqbal).

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

DISCUSSION

Requests for Judicial Notice

Before evaluating plaintiffs' claims, the court first turns to the requests for judicial notice by defendants.

Trustee Corps filed a request for judicial notice in connection with its motion to dismiss. (See Request for Judicial Notice, ECF No. 14 ["RJN"].) Exhibits 1-6 to the RJN are documents recorded in the El Dorado County Recorder's Office: Exhibit 1 is a Deed of Trust dated December 24, 2007 and recorded on January 4, 2008; Exhibit 2 is a Notice of Default recorded on January 18, 2012; Exhibit 3 is a Substitution of Trustee recorded on June 11, 2012; Exhibit 4 is a Notice of Trustee's Sale recorded on June 11, 2012; Exhibit 5 is an Assignment of Deed of Trust recorded on January 23, 2013; and Exhibit 6 is a Notice of Trustee's Sale recorded on January 16, 2014. The court takes judicial notice of Exhibits 1-6 to the RJN pursuant to Federal Rule of

Evidence 201(b), because a court may take judicial notice of "matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Additionally, most of these documents, with the exception of the notices of trustee sales, are also attached as exhibits to plaintiffs' complaint. (Compl. Exs. A [Deed of Trust], G [Assignment of Deed of Trust]; H [Substitution of Trustee], and I [Notice of Default].)

Exhibits 7-14 to the RJN are documents filed in plaintiffs' prior state court action and prior bankruptcy cases. Although the court takes judicial notice of the existence of these filings, it ultimately finds consideration of the documents unnecessary to its resolution of defendants' motions.

Finally, JPMC requests the court to take judicial notice of a September 25, 2008 Purchase and Assumption Agreement ("P&A Agreement") documenting that, after WaMu failed and defendant FDIC was appointed as its receiver, defendant FDIC transferred to JPMC all rights, title, and interest of the receiver in the assets of WaMu. The court grants that request, because the P&A Agreement is a public record available on the website of the FDIC.[5] Additionally, the Ninth Circuit Court of Appeals has recognized that the P&A Agreement is properly subject to judicial notice. See Carmichael v. Washington Mut. Bank, F.A., 508 Fed. App'x 666, 666-67 (9th Cir. 2013) ("The district court did not abuse its discretion in taking judicial notice of the contents of the Purchase and Assumption Agreement.").

The court now proceeds to evaluate plaintiffs' substantive claims. The court first addresses plaintiffs' federal claims (the claims for declaratory relief, violation of the FDCPA, violation of the TILA, and violation of the RICO Act).

First Cause of Action: Declaratory Relief

Plaintiffs' claim for declaratory relief is ostensibly brought under 28 U.S.C. § 2201, which states, in part, that:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

---

[5] See http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf.

> seeking such a declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). Plaintiffs also invoke 28 U.S.C. § 2202, which states that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." Plaintiffs essentially seek a judicial declaration that defendant JPMC and the other defendants do not have any interest in plaintiffs' loan and property, including the note and deed of trust, and that defendants therefore have no right to collect payments from plaintiffs or institute foreclosure proceedings against plaintiffs. (See Compl. ¶¶ 90-95.)

Even assuming, without deciding, that such a declaratory relief claim is potentially cognizable under 28 U.S.C. § 2201, documents attached to plaintiffs' complaint and/or subject to judicial notice reveal that plaintiffs' claim for declaratory relief fails.

On December 24, 2007, plaintiffs obtained a $310,000.00 loan from defendant WaMu. (Compl. Ex. F [December 24, 2007 Note].) The Note was secured by a Deed of Trust, dated December 24, 2007 and recorded on January 4, 2008, which encumbered plaintiffs' real property located at 7365 Nutmeg Lane in Placerville, California. (Compl. Ex. A; RJN Ex. 1.) The Deed of Trust designated plaintiffs as the borrowers, WaMu as the lender, and California Reconveyance Company as the trustee. (Id.)

Subsequently, in September 2008, defendant WaMu failed and defendant FDIC was appointed as WaMu's receiver. (See P&A Agreement, referenced above.) By virtue of the September 25, 2008 P&A Agreement, defendant FDIC transferred to defendant JPMC all rights, title, and interest of the receiver in the assets of WaMu. (Id.) Numerous courts, interpreting the P&A Agreement, have found that these assets included WaMu's loans, as well as the right to foreclose on them. See Heflebower v. JP Morgan Chase Bank, N.A., 2013 WL 5476806, at *6 (E.D. Cal. Sept. 30, 2013) ("In other words, [JPMC] purchased WaMu's loans, including the right to collect payments against the loans, and the right to foreclose on them for failure of borrower to tender payments."); Jones v. JP Morgan Chase Bank, N.A., 2012 WL 4815468, at *1 (N.D. Cal. Oct. 9, 2012); Lomely v. JP Morgan Chase Bank, N.A., 2012 WL 4123403, at **1, 4 (N.D. Cal.

Sept. 17, 2012); Eng v. Dimon, 2012 WL 3659600, at *1 (N.D. Cal. Aug. 24, 2012).

Thereafter, on January 18, 2012, defendant Trustee Corps recorded a Notice of Default dated January 12, 2012. (Compl. Ex. I; RJN Ex. 2.) The Notice of Default stated that Trustee Corps was recording the Notice of Default as agent for the beneficiary under the Deed of Trust, JPMC, based on plaintiffs' default on their loan payments as of June 1, 2010. (Id.) Then, on June 11, 2012, Trustee Corps recorded a Substitution of Trustee, executed on November 28, 2011 by JPMC as beneficiary under the Deed of Trust, substituting Trustee Corps as successor trustee in lieu of California Reconveyance Company. (Compl. Ex. H; RJN Ex. 3.) That same day, Trustee Corps also recorded a Notice of Trustee's Sale, setting a date of July 10, 2012 for the trustee's sale. (RJN Ex. 4.) For reasons not in the record before the court, that sale ultimately did not take place.

Subsequently, on January 23, 2013, JPMC recorded an Assignment of Deed of Trust, executed on January 10, 2013, which states that the beneficial interest under the Deed of Trust was assigned from the FDIC to JPMC. (Compl. Ex. G; RJN Ex. 5.) Then, on January 16, 2014, Trustee Corps recorded a second Notice of Trustee's Sale, setting a date of February 26, 2014 for the trustee's sale. (RJN Ex. 6.) Again, it appears that this sale did not ultimately take place, and plaintiffs suggest in their opposition briefing that defendants have voluntarily ceased their foreclosure efforts during the pendency of this litigation. (ECF No. 18 at 28.)

The above chronology of events, documented by public records subject to judicial notice and/or attached to plaintiffs' complaint, plainly shows that JPMC became the beneficiary under the deed of trust on September 25, 2008 by virtue of the P&A Agreement between the FDIC and JPMC, which assigned WaMu's assets and loans. As such, JPMC is plaintiffs' lawful present creditor, and has the right to collect loan payments from plaintiffs and to direct Trustee Corps to initiate foreclosure proceedings with respect to the Deed of Trust.

Plaintiffs do not dispute that they have a debt on which they are in default. (See ECF No. 19 at 6 ["Plaintiff has never, and does not, dispute that a debt obligation exists. However, Plaintiff does dispute that the Defendants have a valid security interest under the Deed of Trust, such that they can enforce this debt by collecting payment, declaring a default, or otherwise

enforcing the Deed of Trust."].) Plaintiffs' position appears to be based on various spurious legal theories.

Plaintiffs contend that Washington Mutual Bank, F.A. changed its name to Washington Mutual Bank on April 4, 2005, and so became a dead bank, no longer able to contract in its prior name. Nevertheless, Washington Mutual Bank, F.A. was named as the lender in the Deed of Trust involving plaintiffs' loan in December 2007, after it had ceased to exist. In plaintiffs' view, because their loan was made in the name of a non-existent bank, it is invalid and unenforceable. (Compl. ¶¶ 21-26.) Plaintiffs' argument lacks merit, because the mere fact that a bank changed its name does not mean that it had ceased to exist. Lanini v. JPMorgan Chase Bank, 2014 WL 1347365, at *3 (E.D. Cal. Apr. 4, 2014) (rejecting virtually identical argument). At most, Washington Mutual Bank appears to have continued doing business under the name of Washington Mutual Bank, F.A. after the official name change, but plaintiffs cannot plausibly assert that such loans were not part of the assets of Washington Mutual Bank. In any event, plaintiffs fail to articulate how the name change resulted in any actual harm to them, and why it should eviscerate their acknowledged loan obligations.

Plaintiffs also assert that their mortgage or loan was not part of any assets that JPMC claims it acquired from the FDIC through the P&A Agreement, because plaintiffs allege "on information and belief, that sometime after the origination of the loan [and prior to the P&A Agreement], [WaMu] sold Plaintiffs' mortgage and note to an unknown entity or entities." (Compl. ¶ 28.) However, that allegation is entirely conclusory. For example, plaintiffs do not allege that a third party creditor has asserted a duplicative interest in their loan, or has notified plaintiffs of a default based on their failure to make payments to that "actual" creditor. It is entirely implausible that such an unknown entity would never have attempted to collect payments and foreclose on a loan that was supposedly sold to the unknown entity sometime before September 25, 2008. A court cannot "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see e.g. Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day

employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.").

To the extent that plaintiffs claim, based on an endorsement appearing on the Note (Compl. Ex. F), that JPMC lacks standing to collect loan payments and to direct Trustee Corps to initiate foreclosure proceedings due to a prior purported transfer or securitization of the Note by WaMu, that argument has been resoundingly rejected by numerous federal district courts in the Ninth Circuit. See Lester v. J.P. Morgan Chase Bank, 2013 WL 3146790, at *6 (N.D. Cal. Jun. 18, 2013) (collecting several authorities and rejecting virtually identical argument involving WaMu and JPMC); see also Sami v. Wells Fargo Bank, 2012 WL 967051, at *5 (N.D. Cal. Mar. 21, 2012) ("As already recognized by numerous courts, a defendant bank does not invalidate its ability to enforce the terms of a deed of trust if the loan is assigned to a trust pool or Real Estate Mortgage Investment Conduit ("REMIC")…The alleged securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust.").

Therefore, for purposes of plaintiffs' declaratory relief claim, plaintiffs fail to plausibly allege that JPMC has no interest in plaintiffs' loan and property, and thus had no authority to substitute Trustee Corps as trustee and direct Trustee Corps to initiate foreclosure proceedings. To be sure, the January 23, 2013 recording of the Assignment of Deed of Trust from FDIC to JPMC, executed on January 10, 2013, injects some confusion into the chronology of events, given that it was executed and recorded after the Notice of Default, Substitution of Trustee, and the first Notice of Trustee's Sale. However, it appears that the Assignment of Deed of Trust was merely recorded to memorialize in the county records the prior September 25, 2008 assignment of the beneficial interest in the Deed of Trust from the FDIC to JPMC in the context of the P&A Agreement. Moreover, even assuming *arguendo*, that there were some irregularities in how the foreclosure proceedings were instituted, plaintiffs fail to allege any cognizable prejudice:

> "[T]he [plaintiffs] fail to allege any facts showing that they suffered prejudice as a result of any lack of authority of the parties participating in the foreclosure process. The [plaintiffs] do not dispute that they are in default under the note. The assignment of the deed of trust and the note did not change the [plaintiffs'] obligations under the note, and there is no reason to believe that [the original lender] would have refrained from foreclosure in these

> circumstances. Absent any prejudice, the [plaintiffs] have no standing to complain about any alleged lack of authority or defective assignment.

See Siliga v. Mortgage Electronic Registration Systems, Inc., 219 Cal. App. 4th 75, 85 (2013); see also Moriarity v. Nationstar Mortg., LLC, 2014 WL 801021, at *4 (E.D. Cal. Feb. 27, 2014) ("Courts in this circuit have consistently held that borrowers who were not parties to the assignment of their deed—and whose rights were not affected by it—lacked standing to challenge the assignment's validity because they had not alleged a concrete and particularized injury that is fairly traceable to the challenged assignment.").

For the foregoing reasons, plaintiffs' declaratory relief claim should be dismissed. Because the claim is frivolous and based on erroneous legal theories, the court further concludes that leave to amend would be futile, and that the claim should be dismissed with prejudice. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

Fourth Cause of Action: Violation of the FDCPA

Plaintiffs' claims under the FDCPA are not cognizable against JPMC and Trustee Corps. "Although the Ninth Circuit has not addressed the issue, most courts in this circuit have found [that] foreclosing on a property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." Lanini, 2014 WL 1347365, at *11 (citing Izenberg v. ETS Servs., LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008)). Furthermore, the "FDCPA's definition of debt collector does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt, so long as the debt was not in default at the time it was assigned." Nool v. HomeQ Servicing, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009); Bustamante v. J.P. Morgan Chase N.A., 2014 WL 869064, at *3 (S.D. Cal. Mar. 5, 2014) ("mortgagees and mortgage servicing companies are not debt collectors with the meaning of the FDCPA, and are statutorily excluded from liability under that act").

In this case, JPMC is the present beneficiary under the Deed of Trust and services plaintiffs' loan. Trustee Corps is the substituted trustee under the Deed of Trust, and its role is limited to initiating and conducting the foreclosure proceedings at JPMC's direction. Plaintiffs do not contend that their loan was in default at the time that it was assigned to JPMC by the FDIC

in September 25, 2008 by virtue of the P&A Agreement. Although the loan was apparently in default at the time that the Assignment of Deed of Trust was recorded on January 23, 2013, for the reasons discussed above, the loan was actually assigned to JPMC earlier on September 25, 2008 along with all of WaMu's assets. (See P&A Agreement.) Simply put, nothing in the complaint reasonably suggests that JPMC and Trustee Corps are debt collectors for purposes of the FDCPA, and therefore, an FDCPA claim against these defendants is not cognizable.

Because plaintiffs' FDCPA claims against JPMC and Trustee Corps are legally precluded, the court recommends that the claims be dismissed with prejudice.

Sixth Cause of Action: Violation of the TILA

Plaintiffs assert a violation of 15 U.S.C. § 1641(g) of the TILA, which provides that:

> In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including (A) the identity, address, telephone number of the new creditor; (B) the date of transfer; (C) how to reach an agent or party having authority to act on behalf of the new creditor; (D) the location of the place where transfer of ownership of the debt is recorded; and (E) any other relevant information regarding the new creditor.

15 U.S.C. § 1641(g)(1).

As an initial matter, plaintiffs' complaint does not and cannot plausibly allege that Trustee Corps was plaintiffs' new creditor, and as such, plaintiffs' TILA claim against Trustee Corps fails. Additionally, as JPMC points out, 15 U.S.C. § 1641(g) "went into effect on May 19, 2009 and its application is not retroactive." Ballard v. Bank of America, N.A., 2014 WL 503143, at *3 (C.D. Cal. Jan. 28, 2014); see also Jara v. Aurora Loan Servs., 852 F. Supp. 2d 1204, 1209 n.6 (N.D. Cal. 2012). As discussed above, JPMC was assigned the beneficial interest in plaintiffs' loan and deed of trust on September 25, 2008 by virtue of the P&A Agreement, and accordingly had no obligation to comply with 15 U.S.C. § 1641(g), which was not yet operative at that time.

Furthermore, even assuming *arguendo* that JPMC was required to comply with 15 U.S.C. § 1641(g), plaintiffs' claim is time barred under the applicable one-year statute of limitations. See Bergman v. Bank of America, N.A., 2014 WL 265577, at *4 (N.D. Cal. Jan. 22, 2014) (citing

15 U.S.C. § 1640(e)). Although any alleged violation by JPMC would have occurred 30 days after September 25, 2008, "the limitations period does not begin to run until the plaintiff discovers, or reasonably should discover, that she has been injured." Id. (citing Lukovsky v. City and Cnty. of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008)). Also, "[e]quitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000) (overruled on other grounds).

Here, plaintiffs attached a December 14, 2009 letter they received from JPMC to their complaint, which referenced a previous failure to make monthly payments on the loan at issue since October 1, 2009, and which stated, in part:

> Failure to cure the default within the 30-day period may result in Chase declaring the entire outstanding principal balance, accrued interest and any other fees and charges due under the terms of the Note and Security Instrument to be immediately due ("Acceleration"). If this amount is not immediately paid at such time, Chase may exercise any and all remedies available under the terms of the Note and Security Instrument and applicable law, including the commencement of foreclosure proceedings which may result in the sale of your property.

(Compl. Ex. K.) Furthermore, the Notice of Default, recorded on January 18, 2012, specifically referenced "JP Morgan Chase Bank, National Association, successor in interest by purchase from the FDIC as Receiver of Washington Mutual Bank F/K/A Washington Mutual Bank, F.A." (Compl. Ex. I; RJN Ex. 2.) Therefore, by around December 2009, or at a very minimum, by around January 2012, plaintiffs knew or should have known of JPMC's status as the new creditor, with any cause of action for violation of 15 U.S.C. § 1641(g) accruing at that time. Their subsequent claim brought more than one year later on February 25, 2014 is thus time barred.

Finally, even assuming that their claim is not time barred, plaintiffs have not alleged any actual damages resulting from a violation of 15 U.S.C. § 1641(g). See Murphy v. Metrocities Mortg. LLC, 2011 WL 5319917, at *2 n.2 (C.D. Cal. Sept. 27, 2011) (citing 15 U.S.C. § 1640(a)(1) and Beall v. Quality Loan Serv. Corp., 2011 WL 1044148, at *6 (S.D. Cal. 2011)). Plaintiffs have provided no factual allegations suggesting, for example, that JPMC's alleged violation of 15 U.S.C. § 1641(g) has caused plaintiffs to make payments to some other specific

party that has now absconded with plaintiffs' payments, thereby subjecting plaintiffs to double liability for loan payments. Although plaintiffs vaguely suggest that their credit has been damaged, they do not articulate how that is attributable to any violation of 15 U.S.C. § 1641(g), as opposed to their default on their acknowledged loan obligations.

For these reasons, plaintiffs' TILA claim for violation of 15 U.S.C. § 1641(g) is fatally deficient and should be dismissed with prejudice.

Seventh Cause of Action: Violation of the RICO Act

Plaintiffs also allege liability under 18 U.S.C. § 1962 of the RICO Act. "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (citations and quotation marks omitted). Here, plaintiffs fail to allege any non-conclusory facts from which the court can reasonably infer the existence of a RICO enterprise and a pattern of racketeering activity. Instead, plaintiffs' RICO claim appears to be based on their previously-discussed erroneous theories concerning JPMC and Trustee Corps' rights to enforce the terms of plaintiffs' loan and deed of trust. Plaintiffs' attempt to cast this action as a RICO case is baseless and frivolous, and granting leave to amend would be futile. "[C]ourts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Dhaliwal v. Singh, 2013 WL 2664336, at *19 (E.D. Cal. Jun. 12, 2013) (citing Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990)). Therefore, plaintiffs' RICO claims against JPMC and Trustee Corps should be dismissed with prejudice.

Federal Claims Against The Non-Moving Defendants (WaMu and FDIC)

The court recommends that plaintiffs' federal claims for declaratory relief, violation of the FDCPA, violation of the TILA, and violation of the RICO Act against defendants WaMu and FDIC likewise be dismissed with prejudice.

"A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." Silverton v. Dep't of

Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981). "Such a dismissal may be made without notice where the [plaintiffs] cannot possibly win relief." Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987). The court's authority in this regard includes sua sponte dismissal as to defendants who have not been served and defendants who have not yet answered or appeared. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802 (9th Cir. 1995) ("We have upheld dismissal with prejudice in favor of a party which had not yet appeared, on the basis of facts presented by other defendants which had appeared."); see also Bach v. Mason, 190 F.R.D. 567, 571 (D. Idaho 1999); Ricotta v. California, 4 F. Supp. 2d 961, 978-79 (S.D. Cal. 1998).

Here, WaMu, as the originating lender of plaintiffs' loan, and the FDIC, which was appointed as WaMu's receiver after WaMu's failure, are predecessors in interest to JPMC with respect to plaintiffs' loan. Because WaMu and the FDIC are in a position similar to JPMC, plaintiffs' federal claims against WaMu and the FDIC should also be dismissed with prejudice for the same reasons outlined above with respect to plaintiffs' claims against JPMC.

State Law Claims

As noted above, plaintiffs' complaint also asserts various state law claims. However, as there are no federal claims remaining, the court declines to exercise supplemental jurisdiction over such state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim...if – the district court has dismissed all claims over which it has original jurisdiction"); see also Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997) ("'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims'"), quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Here, given that all federal claims have dropped out at the pleadings stage, dismissal of the state law claims without prejudice is appropriate. Furthermore, the court notes that it does not have diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 over the remaining state law claims, because plaintiffs and at least one defendant (Trustee Corps) are alleged to be citizens

of California. (Compl. ¶¶ 9-10, 14).[6]

CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motions to dismiss (ECF Nos. 8, 12) be granted.
2. Plaintiffs' first cause of action (declaratory relief); fourth cause of action (alleged violation of the FDCPA); sixth cause of action (alleged violation of the TILA); and seventh cause of action (alleged violation of the RICO Act) be dismissed with prejudice as against all defendants.
3. Plaintiffs' remaining state law claims be dismissed without prejudice.
4. The Clerk of Court be directed to vacate all dates and close this case.

In light of these recommendations, IT IS ALSO HEREBY ORDERED that:

1. The July 10, 2014 status conference is vacated.
2. All pleading, discovery, and motion practice in this action are stayed pending resolution of the findings and recommendations by the district judge. Other than objections to the findings and recommendations or non-frivolous motions seeking emergency relief, the court will not entertain further motions or amended pleadings until the findings and recommendations are resolved by the district judge.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may

[6] A search of the California Secretary of State's website confirms that Trustee Corps was incorporated in California and appears to maintain its principal place of business in Irvine, California. See http://kepler.sos.ca.gov/. "For the purposes of diversity jurisdiction, 'a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" Kuntz v. Lamar Corp., 385 F.3d 1177, 1181-82 (9th Cir. 2004) (citing 28 U.S.C. § 1332(c)(1)).

waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated: June 9, 2014

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE